The appellant corporation, on June 24th, 1927, executed and delivered to respondent its bond and mortgage to secure the payment of $53,000. The officers and directors of the corporation joined with it as individual obligors in the execution of the bond, and are parties to this appeal. On or about July 9th, 1934, the mortgagor was in default, and with the knowledge and consent of the individual obligors on the bond, requested the respondent to refund or recast the loan so that the indebtedness, which had been reduced to $40,000, would be represented by a straight mortgage loan of $25,000 and a regular building and loan mortgage of $15,000. The respondent agreed to make the recast, and new instruments were drawn and executed on October 30th, 1934, in accordance with the application. The individual obligors on the old bond, however, did not join with the mortgagor corporation in the execution of the two bonds accompanying the new mortgages, which were subsequently duly recorded. The original mortgage was never canceled of record or delivered to the mortgagor, but was retained by the respondent together with the old bond.
The present suit was for the foreclosure of the two mortgages given to replace the original one; and the bill alleges in substance, among other things, that default had been made in the payment of the bonds and mortgages pursuant to the terms and conditions thereof, and further, that the individual obligors on the original bond had failed and neglected to sign and execute the new bonds, and that it was not the intention of the respondent or any of the appellants when refunding the old bond and mortgage, that the individual obligors or any of them should be discharged or released from their liability upon the original bond, and that the failure and neglect to execute the new bonds was due solely to inadvertence in the drawing of said instruments; and further, that at the time of the execution of the new documents, all of the appellants knew and had knowledge that same were not in *Page 342 
accordance with the understanding and intention of any of the parties involved.
The bill prayed in part that the new bonds be reformed to include the original obligors as makers of said bonds, or in the alternative, the substituted bonds and mortgages be canceled, and the original instruments be revived and reinstated, and all the obligors decreed to be liable thereon. The present appellants filed an answer and counter-claim, alleging that the two bonds and mortgages had been substituted and accepted in payment of the original obligation, and prayed for the surrender and cancellation of same.
The learned vice-chancellor found in effect that prior to the recast there had been no suggestion or request made by the appellant to the respondent that the individual obligors be released as such, and further, that the respondent had assumed and intended that the new bonds should be executed by the same parties as appeared on the original. The court by its decree determined the amount due on the two recast mortgages, and directed the sale of the premises involved, and denied the prayer of the respondent to reform the two recast bonds or to revive or reinstate the original bond and mortgage, holding that such action was not necessary to afford the respondent its relief. The prayer of the obligors to be released from their obligation and for the cancellation of the original bond and mortgage was also denied.
It is first argued as a ground for reversal that the new bonds and mortgages were substituted in the place and stead of the first obligation, and by the agreement of the parties the substitution constituted a novation which had the effect of canceling and destroying the evidence of the original obligation, and therefore, there is no liability upon the original bond.
We cannot subscribe to this contention. Novation is generally accepted to mean that there being a contract in existence, some new contract is substituted for it, either between the same or different parties, the consideration mutually being the discharge of the old contract. Morecraft v. Allen, 78 N.J. Law 729;Cooke v. McAdoo, 85 N.J. Law 692. In order to effect a novation there must be a clear and definite *Page 343 
intention on the part of all concerned that such is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed. The intention by the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor. The existence of such an intention need not be shown by express words to that effect, but the same may be implied from the facts and circumstances attending the transaction and the conduct of the parties thereafter. Griffin v. Cunningham, 183 Mass. 505;67 N.E. Rep. 660; 20 R.C.L. 366; 46 C.J. 580.
A careful examination of the evidence is convincing that the respondent had no intention, when it agreed to the recast, to impair its security by releasing the individual obligors, and the proof leads to the reasonable inference that the appellants had no such purpose when the request was made. Hence, in the absence of an agreement that the original obligation be extinguished and a new one, as presented, substituted, there could be no novation.
The record shows that prior to the making of the application for a recast, the board of directors of the mortgagor corporation, the members of which were also the original obligors on the old bond, held a meeting for the purpose of discussing the subject, and as a result Charles W. Littlefield, the president, and Michael A. Jackson, one of the directors, were authorized and directed to attend a meeting of the directors of the respondent for the purpose of arranging a recast of the loan. Harold Simandl, Esq., one of the present appellants, who was a director, as well as attorney for the mortgagor corporation, when testifying on behalf of the defendants, stated in effect, that the only subject discussed at this meeting was that of refunding the original bond and mortgage, and no reference whatever was made to the individual obligors on the old bond. It appears that pursuant to their instructions, both Littlefield and Jackson attended a meeting of the respondent on July 9th, 1934, and requested that the loan be recast so that same would be represented by two bonds and mortgages instead of one. No suggestion was made by them that the individual obligors be relieved of this obligation. *Page 344 
The respondent subsequently instructed its attorney, Richard C. Plumer, Esq., to prepare and arrange for the execution of two new mortgages with accompanying bonds pursuant to the request made by the mortgagor. Mr. Plumer did not prepare the original documents, and apparently did not remember that the old bond had been executed by several individuals together with the mortgagor corporation, and therefore failed to include the individual obligors in the new bonds. Mr. Plumer did not discover the error until approximately two months after the papers had been executed and the mortgages recorded, and reported the fact to the respondent at a meeting held in the forepart of February, 1935. He was then instructed to prepare new bonds and mortgages and obtain the signatures of the individuals who had signed the original bond. Mr. Littlefield, who was also vice-president of the respondent, was present at the meeting, but did not intimate or suggest that it had not been the purpose or intent of the individual obligors to join in the execution of the new obligations. Before carrying out his instructions, Mr. Plumer, on February 27th, 1935, sent a communication to Mr. Littlefield, reading: "Enclosed is a list of the names and addresses of the men who are to sign the bond in the matter above named. In the old one, many of them gave only their initials, which was not particularly satisfactory." He received a reply which stated: "The names on the list are OK." The new instruments were drawn and forwarded to Mr. Littlefield, who returned them unexecuted. Mr. Plumer then called on Mr. Simandl and requested that the new documents as redrafted be executed. Mr. Simandl stated that he would discuss the matter with his clients, and he later informed Mr. Plumer that the individuals would not join with the mortgagor corporation as obligors on the new bonds. It would seem, in view of the attitude of both Mr. Littlefield and Mr. Simandl, who were officers and agents for the mortgagor corporation and the individual obligors, that the individual appellants did not intend to be relieved of their obligation when the application for the recast was made, and the record does not present any proof that would warrant a contrary conclusion. *Page 345 
A party alleging novation has the burden of proof, which the appellants have failed to sustain; and it is considered as settled that a security cannot "be considered released or surrendered where no payment has been made until some act or word of the creditor is proved, clearly manifesting an intention of relinquishing or foregoing his right." Hutchinson v.Swartsweller, 31 N.J. Eq. 205.
The fact that the appellants, having knowledge in February, 1935, that the respondent would not substitute the new documents as presented, did not request or take any action to have the original mortgage canceled or the bond returned until the present bill was filed on March 17th, 1937, justifies a finding that the new instruments were retained without objection solely as supplementary security for the purpose of extending the time and changing the method of payment of the original obligation, pursuant to the intention of all parties involved when the recast was requested.
It is also contended that the decree under review is erroneous in that it deprives the appellants of the rights accorded to them by the provisions of R.S. 2:65-3, which relates to any bond accompanying a mortgage given subsequent to March 29th, 1933. We find no merit in this point, as the original bond was executed prior to this date and has not been canceled or the individual obligors released.
It is further argued that the court erred in adjudicating liability for a deficiency, contrary to the provisions of R.S.2:65-1. We are unable to find anything in the conclusions or decree which adjudges the individual appellants liable upon the original bond. On the contrary, the court in its conclusions, stated: "There may be no liability on the bond;" and the decree simply denies the prayer contained in the counter-claim that the appellants be released from the bond and that the original mortgage be canceled of record.
We conclude that the decree under review should be affirmed.
For affirmance — THE CHIEF-JUSTICE, BODINE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 7.
For reversal — PARKER, CASE, DONGES, HEHER, PERSKIE, PORTER, JJ. 6. *Page 346